IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

J & J SPORTS PRODUCTIONS, INC.,

     Plaintiff,                            No. CIV S-10-3012 JAM EFB (TEMP)

     v.

DULCE TORRES *dba* El Malecon
BAR & GRILL,

     Defendant.                      FINDINGS AND RECOMMENDATIONS
_____/

       This matter came before the court on March 9, 2011, for hearing of plaintiff's motion for default judgment against defendant Dulce Torres, individually and doing business as El Malecon Bar & Grill. Dckt No. 9. Andre LeLievre appeared for Thomas P. Riley on behalf of plaintiff. No appearance was made by or on behalf of defendant at the hearing.

       Plaintiff's counsel indicated at the hearing that as of 3:30 p.m. on the day before the hearing, there had been no contact with defendant since the filing of the action. The court's docket reflects that defendant has not filed any motion for relief from the Clerk's Entry of Default on January 12, 2011. Nor has any opposition to plaintiff's motion for entry of default judgment despite being served with the motion. Upon hearing argument, the court advised counsel of the intended decision and took plaintiff's motion under submission.

////

1

The undersigned has fully considered the briefs and record in this case and for the reasons set forth below, the undersigned recommends that plaintiff's motion be granted and that default judgment be entered against defendant.

## I.   BACKGROUND[1]

The complaint was filed November 9, 2010.  Dckt. No. 1.  A summons was returned executed and filed December 9, 2010.  Dckt. No. 5.  The return of service indicates Rudy Torres, the person in charge at the subject establishment, was served with process after three attempts at personal service.  The summons and complaint was then mailed to plaintiff at the business address of the subject establishment.  Service on defendant is proper pursuant to Federal Rule of Civil Procedure 4(e)(1) and California Civil Procedure Code section 415.20(b).

A request for default was filed January 10, 2011 and default entered by the clerk on January 12, 2011.  Dckt. Nos. 7, 8.  The motion for default judgment, along with declarations of plaintiff's attorney, the president of the plaintiff business, and the declaration of an investigator, Jessica Haverty, was filed January 28, 2011.  Dckt. No. 9.  The motion was served on defendant at defendant's business address.

Plaintiff, a California corporation, is a closed-circuit distributor of sports and entertainment programming.  Pl.'s Compl. ¶¶ 6,9, Dckt. No. 1; Gagliardi Aff. ¶ 3, Dckt. No. 9.  Pursuant to a contract, plaintiff acquired exclusive commercial exhibition licensing rights to a televised boxing match titled *"Firepower:" Manny Pacquiao v. Miguel Cotto WBO Welterweight Championship Fight Program*, (*"Program"*), which was broadcast on Saturday, November 14, 2009.  Pl.'s Compl. ¶ 9; Gagliardi Aff. ¶ 3.  Thereafter, plaintiff entered into sublicensing agreements with various commercial entities across North America, through which it granted limited public exhibition rights to the entities for the benefit and entertainment of the patrons within the entities' respective establishments (e.g., casinos, racetracks, bars, restaurants,

---

[1] These background facts are taken from plaintiff's complaint and the affidavits submitted in support of plaintiff's application for default judgment.  Dckt. Nos. 1, 9.

2

nightclubs). Pl.'s Compl. ¶ 10; Gagliardi Aff. ¶ 3. Plaintiff made transmission of the Program available only to its customers, which were commercial entities that had paid plaintiff a commercial sublicense fee to broadcast the program. Gagliardi Aff. ¶ 8; *see also* Pl.'s Compl. ¶ 10. For example, to exhibit the Program in a commercial establishment that had a fire code occupancy of seventy persons, the commercial sublicense fee would have been $2,200. Gagliardi Aff. ¶ 8 & Ex. 1.

Defendant is alleged to be the owner, operator, licensee, or person in charge of the commercial establishment doing business as El Malecon Bar & Grill. Pl.'s Compl. ¶ 7; Haverty Aff. at 2, Dckt. No. 9, Doc. 11-3. El Malecon Bar & Grill is located at 2518 East Fremont Street, in Stockton, California. Pl.'s Compl. ¶ 7; Haverty Aff. at 2. Defendant did not obtain a license to exhibit the Program from plaintiff.

On November 14, 2009, plaintiff's investigator, Jessica Haverty, entered El Malecon Bar & Grill and observed the unauthorized broadcast of a portion of the Program on three screens in the establishment, a Vizio 42" flat screen, a 52" screen, brand unknown, and a 20" television on the counter behind the bar. Haverty Aff. at 2. A five dollar cover charge was paid. *Id.* Haverty's affidavit approximates El Malecon Bar & Grill's seating capacity at 70 people, and states that Haverty observed approximately 17 patrons inside the subject establishment. *Id.*

On November 9, 2010, plaintiff filed this action alleging that defendant unlawfully intercepted and intentionally broadcast the Program at El Malecon Bar & Grill for the purpose of direct or indirect commercial advantage and/or private financial gain. *See generally* Pl.'s Compl. Plaintiff alleges four claims for relief, which are labeled as "Counts" in the complaint.

////
////
////
////
////

3

1  Plaintiff's first claim for relief alleges that defendant engaged in the unauthorized publication or
2  use of communications in violation of the Federal Communications Act of 1934, 47 U.S.C.
3  §§ 605 *et seq.*[2]  Pl.'s Compl. ¶¶ 8-17.  The second claim alleges that defendant engaged in the
4  unauthorized interception, reception, divulgence, display, and exhibition of the Program in
5  violation of 47 U.S.C. §§ 553 *et seq.*[3]  *Id.* ¶¶ 18-22.  Plaintiff's third claim alleges a common
6  law claim of conversion.  *Id.* ¶¶ 23-26.  The fourth claim for relief alleges a violation of
7  California Business and Professions Code §§ 17200 *et seq.*  *Id* ¶¶ 28-37.
8       A declaration of service filed with the court demonstrates that defendant was properly
9  served through substituted service on December 4, 2010.  Dckt. No. 5.  On January 12, 2011, the
10 Clerk of this Court entered a certificate of entry of default against defendants.  Dckt. No. 8.  On
11 January 28, 2011, plaintiff filed the motion for default judgment that is presently before the court
12 and which was served on defendant.  Dckt. No. 9.  The application seeks judgment on plaintiff's
13 claims for violation of 47 U.S.C. § 605 and 47 U.S.C. § 553, and for common law conversion.[4]
14 Plaintiff requests judgment in the amount of $112,200.[5]  No response to the motion has been
15 filed.
16 ////
17 ////

---

[2] Title 47 U.S.C. § 605 and provisions that follow prohibit the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming.

[3] Title 47 U.S.C. § 553 and related provisions prohibit the unauthorized interception or receipt, or assistance in the intercepting or receiving, of cable service.

[4] The application does not specifically request judgment on plaintiff's claim that defendants violated California Business and Professions Code §§ 17200 *et seq.*, and plaintiff's memorandum in support of the application does not address this claim.  Accordingly, the undersigned does not address this claim.

[5] Although plaintiff also seeks attorney's fees and relevant costs, it has provided no legal argument or evidentiary support for its request for fees and costs.  Accordingly, the undersigned does not address those requests.

4

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)); *see* Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. *Id.* at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to

admit conclusions of law" (citation and quotation marks omitted).); *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. *Geddes*, 559 F.2d at 560; *cf. Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

III.   ANALYSIS

    A.   <u>Appropriateness of the Entry of Default Judgment Under the Eitel Factors</u>

        1.   <u>Factor One: Possibility of Prejudice to Plaintiff</u>

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See PepsiCo, Inc.*, 238 F. Supp.2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without another recourse for recovery. Accordingly, the first *Eitel* factor favors the entry of default judgment.

        2.   <u>Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint</u>

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*, 238 F. Supp.2d at 1175.

////

////

////

Plaintiff seeks entry of default judgment on its claims brought pursuant to 47 U.S.C. § 605(a) and 47 U.S.C. § 553(a).[6] The Federal Communications Act prohibits commercial establishments from intercepting and broadcasting radio communications to its patrons. *See* 47 U.S.C. § 605(a). Under section 605, statutory damages may be awarded between $1,000 and $10,000 for violation of the Federal Communications Act and up to $100,000 when the violation "was committed willfully and for purposes of direct or indirect commercial advantage or financial gain." 47 U.S.C. § 605(e)(3)(C)(I)-(ii). Satellite television signals are covered communications under 47 U.S.C. § 605(a). *DIRECTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008). Section 553(a) provides, in relevant part: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).[7]

Although some courts have concluded section 605(a) applies exclusively to broadcasts obtained by way of a satellite television signal whereas section 553 applies exclusively to transmission over a cable system, plaintiff has been precluded from conducting discovery to ascertain the means of transmission by defendant's failure to defend this action. *See United States v. Norris*, 88 F.3d 462, 466-69 (7th Cir. 1996) (sections 553(a) and 605(a) are not "overlapping statutes" and are thus mutually exclusive); *cf. Intel Cablevision, Inc. v. Sykes*, 75

---

[6] The undersigned does not address the merits of, or sufficiency of the allegations in support of, plaintiff's state law claim for conversion. As discussed more fully below, the undersigned need not reach plaintiff's conversion claim because the recommended statutory damages, if awarded, will sufficiently compensate plaintiff such that an award for conversion damages would be duplicative.

[7] Section 553 carries lower minimum statutory damages and lower enhanced damages than section 605. *Compare* 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii) (providing for the award of statutory damages of not less than $1,000 and no more than $10,000, and under certain circumstances enhanced damages of up to $100,000 per violation), *with* 47 U.S.C. § 553(c)(3)(A)(ii) (providing for the award of statutory damages of not less than $250 and not more than $10,000, and under certain circumstances enhanced damages of up to $50,000 per violation).

F.3d 123, 132-33 (2d Cir. 1996) (holding that section 605 and section 553 are not completely overlapping); *see also TAR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 204-07 (3d Cir. 2001) (recognizing the disagreement between the holdings in *Norris* and *Sykes*, and holding "that § 605 encompasses the interception of satellite transmissions to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system, and no more."). At a minimum, however, plaintiff's complaint and evidence support a conclusion that defendant intercepted, without authorization, a transmission of the Program and broadcast it to its patrons for commercial gain. Plaintiff should not be prejudiced by defendant's failure to appear or defend itself in this action and statutory damages should therefore be awarded under section 605. With respect to enhanced statutory damages, there is no evidence of repeat violations but the very nature of intercepting a signal requires a certain degree of technical expertise, indicating a willful violation of the statute.

        3.     <u>Factor Four: The Sum of Money at Stake in the Action</u>

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp.2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff seeks a significant amount of damages, i.e., $112,200. However, plaintiff's request for statutory damages and damages for conversion are tailored to defendant's specific wrongful conduct. Plaintiff seeks statutory damages under the federal statutes implicated by its claims and, although plaintiff requests $110,000 in statutory damages and enhanced statutory damages, the statutes involved contemplate such an award under certain circumstances. Under these circumstances, the undersigned concludes that this factor favors the entry of default judgment.

        4.     <u>Factor Five: The Possibility of a Dispute Concerning Material Facts</u>

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its statutory claims and affidavits in support of its

8

allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.[8] *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc.*, 219 F.R.D. at 500; *PepsiCo, Inc.*, 238 F. Supp.2d at 1177.

### 5. Factor Six: Whether the Default Was Due to Excusable Neglect

Upon review of the record before the court, the undersigned finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp.2d at 1177. Plaintiff made numerous attempts to personally serve defendant with the summons and complaint and ultimately effectuated substituted service of those documents on defendant. Moreover, plaintiff served defendant by mail with notice of its application for default judgment. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant has not appeared in this action to date. Thus, the record suggests that defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this *Eitel* factor favors the entry of a default judgment.

### 6. Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, ___ F. Supp. 2d ___, No. C 08-5065 PJH, 2010 WL 807446, at *16 (N.D. Cal. Mar. 5, 2010); *ACS

---

[8] Defendant's failure to file an answer in this case further supports the conclusion that the possibility of a dispute as to material facts is minimal.

*Recovery Servs., Inc. v. Kaplan*, No. C 09-01304, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); *Hartung v. J.D. Byrider, Inc.*, No. 1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished).  Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against defendant and will make a recommendation to that effect.  What remains is the determination of the amount of damages to which plaintiff is entitled.

B.     Terms of the Judgment to Be Entered

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered.  Considering plaintiff's briefing and the record in this case, including the affidavits and declarations submitted by plaintiff, the undersigned concludes that plaintiff is entitled to an award of statutory damages in the amount of $10,000 and enhanced statutory damages in the amount of $15,000 for a total award of $25,000, as a result of defendant's unlawful interception and broadcast of the Program, and will recommend the same.

Pursuant to section 605, a court may award statutory damages of "not less than $1,000 or more than $10,000" for violation of the Federal Communications Act, and may also award enhanced damages of up to $100,000 if the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(i)(II), (e)(3)(C)(ii).  It is apparent from the number of screens in the subject establishment, the cover charge, and the technical expertise required to intercept the signal, that broadcasting the Program was done to enhance defendant's business and that such conduct was willful.  However, given the relatively small number of patrons in the establishment at the time of violation and because there is no evidence that plaintiff is a repeat offender, the court

10

concludes a total award of $25,000 is appropriate in the circumstances of this case.

Plaintiff also seeks actual damages for defendant's alleged tortious act of conversion in the amount of $2,200, which consists of the fee that defendant would have had to pay to plaintiff in order to lawfully broadcast the Program through a contractual sublicense.  The undersigned will not recommend an award of damages with respect to plaintiff's conversion claim.  The statutory damages provisions at issue serve not only a deterrent function, *see J & J Sports Prods. v. Orellana*, No. 08-05468 CW, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010) (unpublished), but also a compensatory function, which is evidenced by provisions that permit the award of statutory damages or actual damages in a civil action.  *See* 47 U.S.C. § 605(e)(3)(C)(I); 47 U.S.C. § 553(c)(3)(A)(i).  Here, the recommended award of statutory damages in the amount of $10,000 sufficiently compensates plaintiff.  Accordingly, the undersigned will recommend that plaintiff be awarded no damages on its conversion claim.

Finally, although the prayer for relief in the complaint and the application for default judgment indicate that plaintiff seeks the award of costs and attorneys' fees, the application for default judgment contains no argument or evidence in support of such a request.  Accordingly, the undersigned will not recommend the award of costs or attorneys' fees.

IV.  CONCLUSION

For the reasons stated above, the court HEREBY RECOMMENDS that:

1. Plaintiff's application for default judgment (Dckt. No. 9) against defendant be granted;

2. The court award enhanced statutory damages in the amount of statutory damages in the amount of $10,000 and enhanced statutory damages in the amount of $15,000 for a total award of $25,000 to plaintiff; and

3. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11

1  after being served with these findings and recommendations, any party may file written
2  objections with the court and serve a copy on all parties. Such a document should be captioned
3  "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections
4  within the specified time may waive the right to appeal the District Court's order. *Turner v.*
5  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir.
6  1991).

7  DATED: March 17, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE